**Not For Publication**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TAIBIKA DAWSON | : | |
| Petitioner | : | Civil Action No. 11-2593 (JAP) |
| v. | : | **OPINION** |
| UNITED STATES OF AMERICA | : | |
| Defendant | : | |

**Pisano,** District Judge:

This matter is before the Court pursuant to a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2255 filed by petitioner Taibika Dawson. Petitioner challenges his 2008 conviction in the District Court of New Jersey, alleging ineffective assistance of counsel. For the reasons set forth below, the Court finds that Petitioner's claim is without merit and will therefore be denied.

**I. Background**

On the night of September 4, 2006, Detectives Jason Astbury and John Carrigg of the Trenton Police Department's Trenton Anti-Crime Unit ("TAC"), arrested Taibika Dawson for the possession of two firearms in violation of 18 U.S.C. § 922(g)(1). At the time, the two detectives were patrolling the West Trenton neighborhood of Stuyvesant Avenue and Prospect Street, which is known for its high gang narcotics, and weapons activity, in an unmarked vehicle.

As the two officers slowly patrolled the neighborhood, they passed a residence at 674 Stuyvesant Avenue and they used the spotlight above their vehicle to illuminate a group of about 20-30 people gathered in front of the residence. Although the officers recognized a couple of

1

individuals in the group based on prior encounters, they continued driving because they did not see any suspicious behavior.

Shortly after seeing the group of people, the officers passed the alley next to the residence where they spotted a male (Dawson) walking toward his vehicle. From roughly 25 feet away, the officers noticed a cup in Dawson's left hand and a dark object in his right hand alongside his right thigh. The officers quickly identified the object in his right hand to be a gun and subsequently parked their vehicle and began to pursue Dawson in the alley. As the officers were rapidly approaching, Dawson attempted to shove the gun in his waistband while he scampered towards the 674 Stuyvesant residence. Before Dawson could enter the front door of the residence, Detective Carrigg caught up to him and pulled him down the porch stairs and away from the door. As he was being pulled down from the stairs, Dawson threw a handgun through the doorway and into the residence.

Detective Carrigg ordered Dawson to place his hands on a fence in front of the house, as Detective Astbury went to recover the handgun that had been thrown into the house. Dawson once again attempted to escape before being taken to the ground by Detective Carrigg. Once on the ground, Dawson, who was much bigger than Carrigg, refused to cooperate. He began yelling out to members of the group to help him and simultaneously reaching for his waistband, while Detective Carrigg wrestled with him and called for back up. Detective Astbury abandoned his attempt to retrieve the gun that was inside the house in order to assist his partner in gaining control of Dawson. Once back-up officers, including Officer Lino Rosario, arrived and provided assistance, the detectives were able to regain control and handcuff Dawson. After he was handcuffed, the detectives discovered and revealed a second hand gun tucked in Dawson's waistband as well as $700 in cash in one of his pockets. Once Dawson was secured and under the

officer's control, Detective Astbury went inside the house to retrieve the original handgun. In addition to the handgun, Detective Astbury discovered loose rounds, a box of ammunition, and three vials containing PCP.

On July 24, 2007, attorney David Rhoads was assigned to represent Dawson as his trial counsel. However, before Rhoads accepted Dawson's case, Public Defender Brian Reilly was initially appointed as trial counsel. Dawson became unhappy with Reilly's representation , however, so he filed a motion to have Reilly taken off of his case even though he had worked diligently with an investigator (Kevin Murphy) who had begun to interview witnesses that were in Dawson's favor. Dawson then forwarded this information to Rhoads.

During a four-day jury trial in October 2007, Detectives Astbury, Carrigg, and Rosario testified on behalf of the Government. Additionally, the Government used two fingerprint/crime scene experts to testify about the rarity of recovering usable, identifiable fingerprints from firearms. During the trial, Dawson's counsel reached out to several witnesses but was only able to get in touch with two because the majority of their phones were disconnected. Eventually, only one of Rhoads' potential two witnesses showed up to testify on Dawson's behalf. On October 29, 2008, Dawson was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On April 10, 2008, Dawson was sentenced by this Court to 110 months in prison, the minimum under the sentencing guidelines. Dawson later appealed to the Third Circuit. On April 9, 2009, the Third Circuit of Appeals affirmed Dawson's conviction.

**II. Discussion**

A. Right to Effective Counsel

Dawson claims that he was denied effective assistance of counsel because his attorney was placed in a conflict of interest because he had been diagnosed with cancer. Dawson alleges

that Rhoads' illness forced him to focus and dedicate the majority of his time prolonging his own life as opposed to preparing and developing a convincing defense strategy. Dawson states that the time and effort his counsel spent on his case was grossly inadequate and therefore violated his constitutional right to effective counsel. More specifically, Dawson points out that Rhoads lost 60 pounds during the course of his trial, he witnessed him coughing up blood during a meeting, and that Rhoads mentioned that he would probably be using co-counsel during the case.[1] Moreover, Dawson asserts that Rhoads admitted to him after the trial that he should not have accepted the case given his illness. Dawson also argues that Rhoads failed to enlist an investigator, interview any witnesses, or investigate any potential leads. Additionally, Dawson contends that his attorney failed to cross-examine any of the Government's witnesses and that he continuously failed to take advantage of inconsistent and conflicting testimony of the Government's witnesses.

In order to establish an ineffective assistance of counsel claim, a defendant must show: (1) that counsel's performance was deficient; and (2) that there was a "reasonable probability but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668 (1984). *Strickland* requires courts to determine counsel's performance based on an objective standard of reasonableness. *Id.* at 687. Moreover, judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. In order for a petitioner to succeed on an ineffective assistance of counsel claim, he or she must point to specific errors made by defense counsel, which were unreasonable under prevailing norms. *United States v. Cronic*, 466 U.S. 648, 666 (1984).

---

[1] Ultimately, Rhoads did not use co-counsel.

Dawson's claim that his counsel's decision to not enlist an investigator or interview any witnesses lacks merit. The Supreme Court has held that complete failure to conduct any pretrial investigation may suffice to demonstrate ineffective assistance of counsel. *Id.* at 691. However, in this case, counsel's (Rhoads) conduct throughout the proceedings cannot be classified as a complete failure to investigate. In *United States v. Gray*, 878 F. 2d 702, 710 (3d. Cir. 1989), petitioner's counsel had the names of several witnesses who were present during the alleged crime, but counsel made no attempt to reach out to them. The Third Circuit held that counsel was ineffective because his failure to investigate was based on a lack of diligence as opposed to being based off of tactical decisions. *Id.* at 712. Unlike defense counsel in *Gray,* who made no effort to contact any of the potential witnesses, in this case, Rhoads made numerous phone calls in an attempt to reach out to interview witnesses but the majority of their phones were disconnected. Ultimately, counsel was able to get in touch with two witnesses who agreed to testify. However, only one of those confirmed witnesses actually ended up testifying as the other one did not show up and counsel was unable to reach him on the final day of the trial. Therefore, given the strong presumption the Court places on attorney competency and counsel's diligent pretrial efforts,[2] the Court does not find counsel's performance to be deficient.

Additionally, mere speculation about what potential witnesses might have said is not sufficient to prove ineffective counsel. *United States v. Gray*, 878 F. 2d 702, 712 (3d. Cir. 1989). In this case, all the Petitioner did was provide counsel with a list of potential witnesses and never actually provided any concrete evidence as to what the potential witnesses would have said if they were to testify. The information Petitioner provided was purely speculative, as there was no proof that any of the witnesses even saw him on the night of his arrest. In an analogous case,

---

[2] *See Strickland*, 466 U.S. at 694.

*Campbell v. Burris*, the Third Circuit denied a habeas petition because appellant failed to offer any evidence regarding what the witness would have said to help his defense. 515 F. 3d 172, 184 (3d. Cir. 2008). Similar to *Burris,* Dawson never stated what any of the potential witnesses would have said to strengthen his defense and thus result in an outcome in his favor. Furthermore, Dawson failed to identify any particular witnesses.

Even if the Court were to find counsel's performance to be deficient, Dawson's claim would still fail because it does not meet the second prong of *Strickland*, which requires the petitioner to establish that counsel's deficient performance prejudiced his defense. All Dawson did was provide counsel with a list of potential witnesses and never offered any specific evidence that would suggest that Dawson was not in possession of a firearm. Therefore, Dawson has not demonstrated any "reasonable probability" that the outcome of the trial would have been different.

Dawson's claim that counsel did not develop a plausible defense theory and that he failed to cross-examine and take advantage of inconsistent and conflicting testimony of the Government's witnesses is also without merit. Every indication from the record suggests that counsel used reasonable tactics and strategy throughout the time he was assigned to Petitioner's case. Counsel clearly laid out his defense theory during his opening statement, which was based on the fact that Petitioner never actually possessed the firearm on the night of the arrest. *See* Trial Transcript ("TR.") at 54-56. Additionally, counsel's efforts to legitimize his defense strategy were displayed by his: attempting to reach out to witnesses (TR. at 278-79); challenging the government's evidence (TR. at 67-69, 101, 366-67); questioning the officer's visibility on the night of the alleged crime (TR. at 152-56); disputing the methods used by the Government's

fingerprint experts (TR. at 156-60, 184, 203, 260); and by making numerous objections during the Government's direct and cross-examinations. (TR. at 60-61, 99, 101, 138, 168, 369).

Furthermore, counsel also advised and ensured Petitioner that his decision to not testify on his own behalf would not prejudice him in the jury's decision. TR. at 276-77. Similarly, defense counsel successfully objected on the grounds of prejudice to the Government's attempt to introduce testimony regarding the three vials of PCP that were found next to the firearm in the house and the $700 in cash that was in his pocket. TR. at 11. More importantly, Petitioner has not made any convincing factual showing with respect to counsel's illness. Nor has he identified any explicit errors or deficiencies in his performance as defense counsel. Therefore, counsel's conduct throughout the proceeding falls within the parameters of the objective standard of reasonableness. If this Court were to find counsel's defense strategy to be a representation of ineffective assistance of counsel, the Court would be ignoring the highly deferential standard afforded to attorneys and engaging in the type of second-guessing that the Court rejects in *Strickland*. It will not do so here.

B. Motion to Suppress

Dawson also claims that counsel failed to adequately pursue a motion to suppress. This claim lacks merit because the motion's lack of success was not based on any deficiency made by counsel. To require a hearing, a motion to suppress must set forth and identify for the court specific and concrete issues of fact material to resolution of defendants constitutional claim. *U.S. v Hines,* 628 F. 3d 101, 105 (3d. Cir. 2010). Because Dawson denied ownership or property interest in the two firearms and the motion papers contained no affidavits containing a representation of specific facts by any witnesses, the Court did not have standing to hear the

motion. Thus, defense counsel did not err as the motion was struck down due to the lack of factual basis needed to warrant a hearing.

**III. Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c)(1)(b), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may be issued "only if the applicant has made a substantial showing of denial of a constitutional right." 28 U.S.C. §2253(c)(2). Here, Petitioner failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

**IV. Conclusion**

For the reasons set forth above, the Court dismisses the Petition for lack of merit. An appropriate order follows.

/s/ Joel A. Pisano
JOEL A. PISANO
United States District Judge

Dated: July 15, 2013